UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA : | NO. 1:10-CR-034 (LEK) |
| VS. : | |
| DARRYL SOUSA : | APRIL 5, 2012 |

### DEFENDANT'S PRESENTENCE MEMORANDUM

The defendant, Darryl Sousa, age 31, (dob 5/5/80) stands before this court convicted, after a plea to One Count of Violating 21 U.S.C., Sections 841(a)(1); (b)(i)(C); 846, Conspiracy to Possess with Intent to Distribute more than 50 kilograms of Marijuana; this plea took place on January 28, 2010.  The criminal wrongdoing occurred on August 4, 2008.  On that date information received by DEA plus an extensive investigation revealed that the leader of the Conspiracy, Sean Herrmann, hired Mr. Sousa, and others, to transport marijuana.  In the instant matter, Mr. Sousa received about 150 pounds of marijuana to be delivered to Massachusetts for distribution.  Mr. Sousa was to

be paid $3,500 for his efforts. Through the efforts of DEA and other law enforcement agencies Mr. Sousa was subsequently arrested and pled by way of an Information.

The defendant's prior criminal history consisted of Driving while Impaired for which he received a suspended sentence (no one injured). In Denver, Colorado where he lived, he pled to possessing 8 or more ounces of marijuana. The sentence imposed was a deferral until September of 2010, wherein it was then dismissed and expunged. (Note: in the presentence report, page 25, it has it listed with <u>one point</u> (1) assigned to it; however, the report was written before said date of dismissal/expunged. Consequently, as of the date of sentencing, the only conviction that this defendant has is for a DUI, one point. Hence, it appears that Mr. Sousa is eligible for the "Safety Value" provision of the Guideline, Section 5C1.2, *et seq*. This will be further discussed later.

The defendant was released after his plea in January of 2010 and returned to his home in Denver, Colorado. He made the decision to radically change his life (scared straight); to that end he decided to end his association with known criminals, including those in the marijuana business. His first important step in 2010 was to marry the love of his life, his now wife, Joy Sousa, *nee* Letkemann. This big event was followed by another life change happening, the birth of their daughter, Lily Rose Sousa.

- 2 -

Going straight and having children required getting and keeping a legitimate job. To that end he decided to put his talents, as it were, to positive use and secured employment in January 2010 with the Cultrate Garden Supply Store. Since that date, over 2-1/4 years ago, he has been steadily rising in the business organization and is now a manager of the store through his hard work and commitment to change. Mr. Sousa, given this opportunity by the Court's willingness to allow him to remain free pending sentencing, has rejected his old lifestyle ("its only marijuana") for a new constructive one in getting married, having children and working full-time in his new and very honest business. Of course, this also included complying with probation under their watchful eye and direction.

## **THE GUIDELINES**

Under the dated information found in the Guidelines found in the pre-sentence report of July, 2010, the sentencing level is 19, with a criminal history level of two because of the DUI conviction (1) and the now dismissed arrest in 2008. (See pp. 7-8 PSR.) Hence a Guideline range of 33-41 months in prison is called for in the instant presentence PRS.

For several reasons it is submitted that the Guideline range is too high. First, it is

- 3 -

clear that Mr. Sousa was a "mule", one who's sole job was to move marijuana from point A to point B for the organizer (Sean Herrmann). Mr. Sousa had no decision making role. On the scale of authority, he was at the bottom.

The advisory Guidelines provide for a reduction for an individual, such as this defendant who's role was limited to transporting marijuana, who plays a lesser role within the conspiracy. USSG Section 3B1.2 provides:

> Section 3B1.2. <u>Mitigating Role</u>. Based on the defendant's role in the offense, decrease the offense level as follows: (a) If the defendant was a minimal participant in any criminal, decrease by 4 levels. (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels. In cases falling between (a) and (b), decrease by 3 levels.

The commentary to that section provides the following guidance for its potential application:

> (A) <u>Substantially Less Culpable than Average Participant</u>. – This section provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant. A defendant who is accountable under Section 1B1.3 (Relevant Conduct) only for the conduct in which the defendant personally was involved and who performs a limited function in concerted criminal activity is not precluded from consideration for an adjustment under this guideline. **For example, a defendant who is convicted of a drug trafficking offense, whose role in that offense was limited to transporting or storing drugs and who is accountable under Section 1B1.3 is only for the quantity of drugs the defendant personally transported or stored is no precluded from consideration for an adjustment under this guideline.**

- 4 -

> (C) <u>Fact-Based Determination</u>. – The determination whether to apply subsection (a) or subsection (b), or an intermediate adjustment, involves a determination that is heavily dependent upon the facts of the particular case. As with any other factual issue, the court, in weighing the totality of the circumstances, is not required to find, based solely on the defendant's bare assertion, that such a role adjustment is warranted.
>
> \* \* \* \*
>
> 4. <u>Minimal Participant</u>. – Subsection (a) applies to a defendant described in Application Note 3(A) who plays a minimal role in concerted activity. It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant. It is intended that the downward adjustment for a minimal participant will be used infrequently.
>
> 5. <u>Minor Participant</u>. – Subsection (b) applies to a defendant described in Application Note 3(A) who is less culpable than most other participants, but whose role could not be described as minimal.

Defendant seeks a four (4) level reduction based upon the application of this section. Defendant was paid for the sole function of transporting marijuana; his dealings were limited to one co-conspirator; he had no knowledge of the internal workings of the distribution network beyond his role. Application of this section along reduces the defendant's Total Offense Level to 15 and advisory sentencing range to 21 of 27 months.

## SAFETY VALVE/CRIMINAL HISTORY LEVEL

Since the state case in Colorado has been dismissed it should not be counted; (See 4A1.2 (j)). This has two immediate effects under the Guidelines. First, Mr. Sousa's criminal history category should be reduced to Category 1, not 2. Under Category 1, even with the PSR's level of 19, Mr. Sousa's Guidelines should be 30 – 37 instead of 33 to 41 months. (PSR p.6).

Additionally, with only one criminal history point (for the DUI conviction), under 18 U.S.C., Section 3553 (f)(i-5) and 5C1.2 Safety Valve of the Guidelines, Mr. Sousa would qualify for an additional 2 level deduction from Level 19 to Level 17, (24-30 months), exclusive of dropping 4 or less points for "Role in the Offense", discussed earlier. This could lower it to level 13 with Criminal History Category 1, which results in a term of imprisonment under the Guideline range of 12-18 months. At this range he would fit in "Zone C" of the sentencing table, which would allow this court to satisfy the criminal liability by imposing a sentencing wherein half of said sentence could be satisfied by home confinement. (See 5C1.1(d)(2) of Guidelines.)

## MOTION FOR A NON-GUIDELINE SENTENCE

In United States v. Booker, the Supreme Court held that 18 U.S.C. Section

BROWN PAINDIRIS & SCOTT, LLP – ATTORNEYS AT LAW
100 PEARL STREET – HARTFORD, CONNECTICUT 06103 – (860) 522-3343 – JURIS NO. 20767

3553(b)(1), which required courts to sentence defendants pursuant to "mandatory sentencing rules" that made the sentence dependent upon facts not proved to the jury, violated the Sixth Amendment. 125 S.Ct. 738, 756 (2005). The Court effectively severed 18 U.S.C. Section 3553(b)(1) from the statute. Id. At 764. Thus, the statutory instruction to federal courts that they must sentence within the applicable Guideline range, section 3553(b)(1), was struck down. Id.; see also U.S. v. Barrero, 425 F.3d 154, 156 (2nd Cir. 2005), and the application of the sentencing guidelines became advisory, not mandatory.

The Supreme Court provided further clarification in Kimbrough v. United States, 552 U.S. 85 (2007) and Gall v. United States, 552 U.S. 38 (2007) and provided District Courts with unprecedented flexibility since the enactment of the Sentencing Guidelines in 1987. In Kimbrough, the Supreme Court spelled out the method by which District Courts are to consider the application of the Sentencing Guidelines and reach an appropriate and legal sentence that will withstand appellate scrutiny:

> The District Court should begin by appropriate calculating the applicable Guidelines sentencing range. The Guidelines are the starting point and initial benchmark but are not the only consideration. After permitting both parties to argue for a particular sentence, the Judge should consider all of the 18 U.S.C. Section 3353(c)'s factors to determine whether they support

BROWN PAINDIRIS & SCOTT, LLP – ATTORNEYS AT LAW
100 PEARL STREET – HARTFORD, CONNECTICUT 06103 – (860) 522-3343 – JURIS NO. 20767

either party's proposal. He may not presume that the Guidelines range is reasonable but must make an individualized assessment based on the facts presented. If he decides on an outside-the-Guidelines sentence, he must consider the extent of the deviation and ensure that the deviation is sufficiently compelling to support the degree of the variation. He must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.

Kimbrough at 45.

Section 3553(a) provides "that a court must imposed a sentence that is 'sufficient *but not greater than necessary*, to comply with the purposes of [sentencing]'. Id. At 59." (emphasis added). "[The] ... Supreme Court has referred to as the "overarching instruction' of 18 U.S.C. Section 3553(a)". See Kimbrough v. United States, 128 S.Ct. 558, 563 (2007).

In the instant matter it is clear from the personal history found and outlined in the pre-sentence report that Mr. Sousa for whatever reason at such a young age, 15, began living a life of substance abuse. He went from alcohol to abuse of marijuana and other mind altering drugs, including ecstasy, psychedelic mushrooms and LSD. (See p. 9 PSR.) This lifestyle carried over from high school to college and greatly influenced his conduct and judgments. Quite frankly, until his federal arrest (the big leagues) nothing seemed to get into his brain.

- 8 -

BROWN PAINDIRIS & SCOTT, LLP – ATTORNEYS AT LAW
100 PEARL STREET – HARTFORD, CONNECTICUT 06103 – (860) 522-3343 – JURIS NO. 20767

As mentioned earlier, after his federal arrest and plea, Mr. Sousa made the fundamental decision that drugs and his irresponsible and sometimes criminal actions needed to stop. Since action speaks much louder than words, he took it upon himself to totally divorce himself from the aforementioned lifestyle. As earlier noted he got married to a woman who had her own positive career, who would not tolerate the old Darryl. They now have a family and a very positive lifestyle.

Additionally, Mr. Sousa felt he needed to do more. To that end he instructed me to call A.U.S.A. Terrence Kelly and inform him that Mr. Sousa was fully prepared to cooperate and help the government any way he could, even if it meant testifying against his former "friend" and co-defendants. He was always on standby and signed a cooperation agreement; however, Mr. Kelly was not sure that he needed him in the other matter. His sentencing was repeatedly extended until Mr. Kelly was able to obtain pleas without the necessity of a trial. While Mr. Kelly presumably appreciated Mr. Sousa's willingness to be available, if necessary, his conduct did not rise to the level of a 5K1 motion. (Note: this seems always to be true to the less involved defendants; whereas those more heavily involved, know more, they, ironically are more valuable and hence get the 5K1s.)

It is submitted that this case has some unusual and very positive factors about it. There is no claim that Mr. Sousa was violent or used weapons in the commission of this crime. There is strong evidence that his earlier life was filled with substance abuse. There is clear evidence that Mr. Sousa has finally "gotten it", meaning that the time had come, now over two years ago that a drug lifestyle was destructive for him and others and reversed his life. He is now a family man, providing for his family and himself in a honest drug-free environment. While he was not messing around with cocaine or heroin, nevertheless, marijuana is illegal and the laws must be respected. This is demonstrated not only by his conduct, but by his willingness, at risk to himself, to work with the authorities in the due administration of justice; such actions even if not 5K1 material, should be recognized and encouraged by the system. All of the factors under Title 18 U.S.C. Section 3553 can be met by a non-guideline sentence. It is questionable whether a stint in prison would do more harm than good. Mr. Sousa needs to be kept away from felons not housed with them. He needs to be working, not wasting away at some prison facility. If he loses this terrific job he has, getting another job as a convicted felon, at best, will be very difficult. Clearly, there are more constructive ways of punishing Mr. Sousa, such as home confinement, than behind bars and worse. Mr. Sousa has taken this

opportunity through a two year extended release before sentencing to do something that in the end not only benefited himself and his family, but also law enforcement and the public as a whole.

Wherefore, it seems that a non-guideline sentence recognizes all of the aforementioned good works and would be appropriate and consistent with the requirements of 18 U.S.C. Section 3553.

DEFENDANT, DARRYL SOUSA

By_____
Richard R. Brown
Brown Paindiris & Scott, LLP
100 Pearl Street, Suite 1100
Hartford, CT 06103
Tel: 860-522-3343
Fax: 860-522-2490
Bar Roll # 602917
rbrown@bpslawyers.com

Lee Greenstein
636 Delaware Avenue
Delmar, NY 12054
Bar Roll #101859
leegreenstein@yahoo.com

## CERTIFICATION

This is to certify that on April 5, 2012, a copy of the foregoing Defendant's Pre-Sentencing Memorandum of Visiting Attorney Richard R. Brown, was sent to all parties of record as follows:

A.U.S.A. Terrance Kelly
Office of U.S. Attorney
445 Broadway, Room 218
Albany, NY  12207-2924

U.S.P.O. Angela B. Rodriguez
James T. Foley Courthouse
445 Broadway, Room 347
Albany, NY  12207

_____
Richard R. Brown